UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MY HOANG,

          Plaintiff,

    v.

WELLS FARGO d/b/a WELLS FARGO HOME MORTGAGE,

          Defendant.

C14-777-TSZ

ORDER

THIS MATTER comes before the Court upon defendant's motion for summary judgment, docket no. 36. Having reviewed all papers filed in support of, and in opposition to, the motion, and having heard oral argument on August 11, 2016, the Court enters the following Order:

**Background**

Plaintiff My Hoang was employed as a Home Mortgage Consultant ("HMC") by defendant Wells Fargo within its Home Mortgage ("WFHM") division until 2014. At the

ORDER - 1

time the relevant events began, Hoang worked out of the Renton Village bank branch,[1] primarily serving the Vietnamese community of southern King County.  Starting in 2010, Hoang began having issues with another Vietnamese HMC named Sandy Nguyen. Burnham Decl., docket no. 38, ¶ 6.  Plaintiff claimed that Nguyen was harassing her and threatening to take her Vietnamese customers.  *Id.*  As a result, Wells Fargo ordered Nguyen to have no contact with Hoang.  *Id*. ¶ 8.  In a June 18, 2012, "Confidential Harassment Report" to Wells Fargo, plaintiff claimed that Ms. Nguyen had ignored the prohibition and also claimed that her current managers were creating a hostile work environment.  *Id.* ¶ 10.  In August 2012, plaintiff was reassigned to report to Gregg Kingma in Seattle.

Hoang claims that the Seattle office treated her "like an outcast."  Hoang Decl., docket no. 47, ¶ 7.  She alleges that it was entirely "of European descent" and that the staff treated her rudely as a result of her command of English.  *Id.*  She claims that her new manager, Kingma, would openly criticize her English in front of coworkers and stated that plaintiff needed "to learn and use proper English."  *Id.* ¶ 8.  In contrast, Kingma states that he only was trying to help Hoang improve her English so that she could "communicate more clearly."  Kingma Decl., docket no. 37, ¶ 24.

Although she had been working from the Renton Village branch for some time, Hoang began having issues with Andrea Gonzales, the branch's new manager.  Although

---

[1] HMCs worked out of Wells Fargo bank branches but additionally had reporting obligations to WFHM offices which covered other bank branches.

ORDER - 2

HMCs work out of normal bank branches, HMC employees are "guests" at bank branches, and are present only on the sufferance of the branch's manager. Kingma Decl., docket no. 37, ¶ 26. Gonzales accused Hoang of being disruptive with customers, providing bad service to other customers, treating all mortgage business that came into the branch as her personal book of business, and incurring overtime for bank employees by refusing to abide by the branch's hours. Gonzales Decl., docket no. 40, ¶¶ 10-15. After attempts to remedy the problems, Hoang was required to transfer from the Renton branch to a different Wells Fargo branch. *Id.* ¶¶ 20-22. Thereafter, Hoang transferred to the Federal Way branch on July 1, 2013, and ultimately resigned on August 28, 2013. Kingma Decl., docket no. 37, ¶ 35. This lawsuit followed, alleging violations of the Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq.* and constructive discharge. Plaintiff relies heavily on her declaration in opposition to defendant's motion for summary judgment, docket no. 47. Plaintiff contends that the declaration outlines the substance of her complaints and creates a factual dispute that precludes summary judgment. The Court agrees that there are factual issues that preclude summary judgment on the disparate treatment discrimination based on race or national origin, retaliation based on discrimination and constructive discharge.[2]

However, the Court dismisses the hostile work environment claim for the reasons stated in this order.

---

[2] The Court previously dismissed all claims based on age discrimination for the reasons stated on the record.

ORDER - 3

**Discussion**

**A.     Standard**

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While "all justifiable inferences" are to be drawn in favor of the non-moving party, *id.* at 255, when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

**B.     Analysis – Hostile Work Environment – State Law**

To establish a prima facie case, plaintiff must show that she suffered harassment that was (1) unwelcome, (2) because she was a member of a protected class, (3) affected the terms and conditions of her employment, and (4) was imputable to the employer. *Davis v. West One Automotive Group*, 140 Wn. App. 449, 457 (2007).

In this case, plaintiff's claim of hostile work environment is based on allegations that Mr. Kingma corrected her English in front of other employees at team meetings and she was humiliated. Hoang Decl., docket no. 47, ¶ 8. Plaintiff also alleges that at other times, the staff "would make fun of my speech" at staff meetings. Plaintiff stated that these comments occurred at group meetings at times. *Id.* ¶ 7. These comments were

isolated incidents and occurred over a three year period.  These remarks, combined with plaintiff's complaints of unfair treatment cannot form the basis for a claim for hostile work environment under Washington law.  The Washington law against discrimination is not intended as a general civil code and not everything that occurs in the workplace gives rise to an "adverse action."  These events were not "sufficiently pervasive" as to alter the conditions of plaintiff's employment or create an abusive work environment as a matter of law.  *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401 (1985).  In *Glasgow*, the court explained that

> Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms and conditions of employment to a sufficiently significant degree to violate the law.

In addition, there is no evidence in the record of the alleged harassment *because* she was a member of a protected class.  The workplace harassment claim requires that the complained of conduct "concern" a protected characteristic.  *See Crownover v. State ex rel. Dep't of Transp.*, 165 Wn. App. 131 (2011).  ("The employee's gender must be the 'motivating factor' for the conduct.").  The only conduct or language that relates to plaintiff's claim of a hostile work environment based on Hoang's race or national origin is Kingma's corrections of her English and that her co-workers treated her rudely as a result of her command of English.  There is no evidence that any of the other conduct she complained of (e.g., transfer to other branches) had anything to do with her race or national origin.  Finally, plaintiff offers no evidence in support of her contention that the correction of her English affected "the terms and conditions of employment."

ORDER - 5

**Conclusion**

In conclusion, the Court GRANTS defendant's motion, docket no. 36, in part and DISMISSES plaintiff's claims for hostile work environment based on race, national origin, and age.  The Court DENIES the motion for summary judgment as to: (i) plaintiff's disparate treatment claims based on race and national origin; (ii) retaliation due to opposition based on race and national origin; and (iii) constructive discharge. These claims will remain for trial.

IT IS SO ORDERED.

Dated this 18th day of August, 2016.

_____
Thomas S. Zilly
United States District Judge